**Julia L. KURTZ, Appellant,**

v.

**Ronald D. KURTZ, Appellee.**

**No. 14–02–01187–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 30, 2004.

Rehearing Overruled March 10, 2005.

Thomas C. Wright, Thomas R. Conner, Houston, for appellant.

Ronald D. Kurtz, Pasadena, pro se.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this appeal we are asked to determine whether the trial court erred when it refused to award attorney's fees and costs to appellant Julia L. Kurtz ("Julia") pursuant to an agreed divorce decree providing, in part, for the payment of attorney's fees and costs in "a subsequent suit to modify child support." We also determine whether Julia's child support modification claims are so inextricably intertwined with her financial claims asserted against appellee Ronald D. Kurtz ("Ronald") and her defense of his counterclaims that segregation of her attorney's fees is not required. Because we conclude the provision in the agreed divorce decree unambiguously requires Ronald to pay reasonable and necessary attorney's fees and costs in a subsequent action to modify child support, we hold the trial court erred in refusing to award any fees under the provision. We

further hold Julia is not required to segregate attorney's fees and costs relating to her modification of child support claim from those expended in defense of Ronald's counterclaims pertaining to the child support award and offsets for direct payments to Julia. However, we hold segregation is required for attorney's fees and costs incurred in connection with Julia's remaining financial claims against Ronald and her defense of his other counterclaims. Accordingly, we reverse and remand for a determination of Julia's attorney's fees and costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Julia and Ronald Kurtz were divorced on October 6, 1995. In their agreed divorce decree (the "Decree"), Ronald was ordered to pay $200 per month for the support of their two minor daughters.[1] As part of the division of the parties' estate, the Decree provided for the payment of attorney's fees and costs as follows ("attorney's fees provision"):

> Further, RONALD D. KURTZ IS ORDERED to pay the attorney's fees and costs incurred by JULIA L. KURTZ in a subsequent motion to modify child support. The attorney for JULIA L. KURTZ will provide to RONALD D. KURTZ on or before the Order Modifying Prior Order is executed by the Court a statement of the fees and costs incurred and IT IS ORDERED that RONALD D. KURTZ will pay said fees and costs within thirty (30) days from his receipt thereof.

Neither party appealed from the Decree.

More than six years after the divorce, Julia filed a "Petition to Modify Parent-

---

1. Ronald and Julia were both lawyers at the time the Decree was entered; however, Ronald was unemployed.

Child Relationship and for Judgment." In her petition, Julia sought an increase in Ronald's monthly child support obligation, enforcement of previous judgments, and a cumulative judgment for various unpaid debts, including credit card debts, income tax liabilities, and medical expenses.[2] Ronald filed an answer and subsequently, a counter-petition seeking, among other things, joint managing conservatorship, modified visitation rights, a restriction on the children's residence, a decrease in child support, and offsets for payments made directly to Julia. Julia answered the counterclaim and amended her petition. In her second amended petition, Julia requested child support in excess of the presumptive statutory guidelines.[3] She also acknowledged that Ronald voluntarily increased his child support payments when he became employed in 1998, and he had been paying $1,350 per month since January 1, 2001, when his income exceeded $6,000 per month.[4]

After a bench trial, the court rendered judgment in favor of Julia on all issues except recovery of the majority of her attorney's fees and costs. Although the trial court did award Julia $6,000 in attorney's fees for time expended to reduce to judgment various debts Ronald owed under the Decree,[5] it denied Julia's request for attorney's fees related to her action to modify Ronald's child support obligation. The trial court also entered numerous findings of fact and conclusions of law.

In its findings and conclusions, the trial court determined the attorney's fees provision impliedly provided for payment of "reasonable and necessary" attorney's fees and costs. The court found that, to the extent the phrase "attorney's fees and costs incurred" could be construed to mean anything other than "reasonable and necessary" attorney's fees and costs, it was ambiguous. The court also found that the attorney's fees provision is rendered unconscionable and unenforceable when interpreted in a manner allowing for the recovery of attorney's fees and costs not reasonable and necessary to a suit for modification of child support. As a basis for denying Julia's requested fees, the trial court reasoned that, because Ronald had been paying child support in accordance with the statutory guidelines, none of Julia's attorney's fees relating to the modification of child support were reasonable or necessary. Moreover, as a separate basis for denying attorney's fees under the pro-

---

**2.** Julia's claims, other than her child support modification claims, will be collectively referred to throughout this opinion as her "other financial claims."

**3.** The Family Code establishes guidelines for child support which are presumed to be reasonable and in the children's best interests. TEX. FAM.CODE ANN. § 154.122 (Vernon 2002). The court may order support above or below the guideline amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the children and justifies a variance from the guidelines. Id. § 154.123(a). The guidelines are specifically designed to apply to situations in which the obligor's monthly net resources are $6,000 or less. Id. § 154.125. If the obligor's net resources exceed $6,000 per month,

the court shall apply the percentage guidelines to the first $6,000. Id. § 154.126. The court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the children. Id.

**4.** Specifically, Julia stated in her petition that (1) starting July 1, 1998, Ronald began paying $940 per month due to his becoming employed; (2) on October 15, 1998, he began paying $1,010 per month due to an increase in pay; (3) on January 15, 1999, he began paying $1,110 per month due to an increase in pay; and (4) on January 1, 2001, he began paying $1,350 per month as his net income was over $6,000.

**5.** Ronald does not appeal the $6,000 award.

vision, the trial court found that Julia's request for an award of child support in excess of the statutory guidelines constituted an unreasonable and excessive demand.

## II. ISSUES PRESENTED

In twelve issues, Julia contends the trial court erred in refusing to award attorney's fees and costs under the attorney's fees provision because the Decree unambiguously provides she is entitled to recover those fees and costs without regard to whether they are reasonable or necessary. Moreover, Julia maintains she is entitled to all of the attorney's fees and costs she incurred—over forty thousand dollars—because the child support claims are inextricably intertwined with her other financial claims and with Ronald's counterclaims and thus, fall within the exception to the segregation requirement. Julia also challenges the trial court's conclusions of law and the legal and factual sufficiency of the evidence supporting many of the trial court's findings of fact.

We address only those issues necessary to resolve this appeal in the following order: (A) interpretation and application of the Decree's attorney's fees provision; (B) unreasonable and excessive demand; and (C) segregation of attorney's fees.

## III. ANALYSIS

### A. INTERPRETATION AND APPLICATION OF THE DECREE'S ATTORNEY'S FEES PROVISION

**1. Does the Attorney's Fees Provision Unambiguously Provide for Payment of "Attorney's Fees and Costs" Without Regard to the Reasonableness and Necessity of the Fees?**

On appeal, Julia contends the attorney's fees provision unambiguously requires that Ronald pay her attorney's fees and costs without any requirement that the fees be reasonable or necessary. Ronald argues the phrase "attorney's fees" can only be read to unambiguously mean "reasonable and necessary attorney's fees" and, alternatively, if the phrase is ambiguous, then the trial court properly resolved the fact issue of the parties' intent.

The attorney's fees provision orders Ronald to pay "attorney's fees and costs incurred" by Julia "in a subsequent motion to modify child support." Thus, we agree the trial court erred in refusing to award Julia any of the attorney's fees she incurred in the prosecution of her action to modify child support. However, we cannot agree she is entitled to recover those fees and costs without regard to their reasonableness or necessity.

In paragraphs nine and ten of its findings of fact and conclusions of law, the trial court concluded that "attorney's fees" in the provision means "reasonable and necessary attorney's fees," stating:

9. The attorney fees expended by [Julia] to modify child support were not reasonable and necessary. Any contrary conclusion would suggest that, when a party is ordered, or agrees, to pay attorney fees in "a subsequent action to modify child support," this creates a blank check in which the opposing party could recover unreasonable, unnecessary fees in any amount. This Court rejects this argument as legally and factually untenable.

10. The Decree Attorney Fee Provision is ambiguous to the extent that the phrase "attorney's fees and costs incurred" could be construed to mean anything other than "*reasonable and necessary* attorney's fees and costs incurred." To the extent the Decree Attorney Fee Provision

is a contract, the parties intended it to cover only *reasonable and necessary* attorney's fees and costs incurred by Petitioner in a motion to modify *child support*. To the extent the Decree Attorney Fee Provision is an order of this Court, the Court intended and determines it to cover only *reasonable and necessary* attorney's fees and costs incurred by Petitioner in a motion to modify *child support*.

Thus, the trial court concluded that reasonableness is an implied term of the attorney's fees provision.

■ Because both Ronald and Julia agreed to the Decree, its construction is governed by the law of contracts. *See Allen v. Allen,* 717 S.W.2d 311, 313 (Tex. 1986); *see also Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 422 (Tex.2000) ("An agreed judgment should be construed in the same manner as a contract."). Whether a contract is ambiguous is a question of law. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996).

■ Neither Julia nor Ronald have provided any authority in support of their positions, and we have found no Texas case directly on point. However, our research reveals that at least one Texas court has held that an agreement to pay unspecified attorney's fees implies payment of a rea-

sonable fee for the attorney's services. *See Girard Fire & Marine Ins. Co. v. Koenigsberg,* 65 S.W.2d 783, 785 (Tex.Civ. App.-Dallas 1933, no writ) ("Where the parties do not expressly agree as to the amount, the law raises a promise to pay that which is reasonable.") Courts in other jurisdictions have also determined that, as a matter of public policy, reasonableness is an implied term in any contract for attorney's fees. *See, e.g., Crest Plumbing & Heating Co. v. DiLoreto,* 12 Conn.App. 468, 531 A.2d 177, 183 (1987); *Kaminsky v. Kaminsky,* 29 S.W.3d 388, 390 (Mo.Ct. App.2000); *Missouri ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 835 (Mo.Ct.App.1995). We agree with this reasoning.[6]

Julia's argument—that she is not required to demonstrate the attorney's fees she seeks are reasonable and necessary because the attorney's fees provision does not expressly state so—is unpersuasive. As the trial court reasoned, such a conclusion would result in a "blank check" permitting an opposing party to recover unreasonable, unnecessary fees in any amount. Moreover, the attorney's fees provision is not rendered ambiguous merely because it does not expressly state that it is limited to "reasonable and necessary" attorney's fees and costs.[7]

---

6. Our conclusion that a contract for attorney's fees impliedly means a contract for reasonable attorney's fees is likewise consistent with the Texas Disciplinary Rules of Professional Conduct. Disciplinary Rule 104, governing a lawyer's fee arrangements with his clients, provides that "a lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 1998). The rule explains that a fee is unconscionable "if a competent lawyer could not form a reasonable belief that the fee is reasonable." *Id.* Every lawyer is bound by the rule

and consequently, any fees charged or collected must be reasonable. *Cf. Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997) (holding an award of attorney's fees under DTPA must be reasonable based upon Disciplinary Rule 1.04).

7. Although Julia contends she was not required to prove the reasonableness of her attorney's fees, she did present evidence that the fees were reasonable. Ronald did not challenge the amount of the fees; as he explained during cross-examination by Julia's attorney:

Your Honor—Mr. Conner, I'll cut to the chase for you. My complaint about the

Accordingly, we hold that reasonableness is an implied term in the Decree's attorney's fees provision and construe the term "attorney's fees and costs" to unambiguously require that Ronald pay only reasonable and necessary attorney's fees and costs.

## 2. Is the Attorney's Fees Provision Unconscionable?

In paragraphs thirteen and fourteen of its findings and conclusions, the trial court determined that any interpretation of the attorney's fees provision permitting the recovery of fees and costs not reasonable and necessary to a modification of child support renders the agreement unconscionable and unenforceable. Any other interpretation, the trial court explained, would permit Julia to recover all of her attorney's fees even though only a portion of the fees incurred were expended on the action to modify child support.

On appeal, Julia contends Ronald waived the defense of unconscionability because he did not plead it. Additionally, she argues the fees were in fact reasonable and necessary; therefore, they cannot be unconscionable. Because we have determined that the attorney's fees provision implies payment of reasonable and necessary attorney's fees and costs, we do not consider whether a contrary interpretation would be unconscionable.

## 3. Do Ronald's Voluntary Child Support Payments in an Amount Greater than Ordered in the Decree Render Julia's Attorney's Fees Unreasonable and Unnecessary?

■ Julia also contends the trial court erred in determining that the entire amount of the attorney's fees and costs she requested under the attorney's fees provision were unreasonable and unnecessary because Ronald was voluntarily paying child support in accordance with the statutory guidelines.[8] We agree.

In paragraphs two, five, six, and seven of its findings of fact and conclusions of law, the trial court determined the following: (1) Ronald "voluntarily paid 22.5% of the first $6,000 of net resources to [Julia] as child support since, and before, the Petition to Modify was filed"; (2) the amount Ronald was voluntarily paying was the appropriate amount of support due; (3) Julia was seeking support in excess of the statutory guidelines; (4) when the Decree was executed in 1995, Ronald was unemployed and the Decree's attorney's fees provision was designed to "permit the formalization of the new child support amount" once Ronald became employed; and (5) because Ronald was already voluntarily paying "the full amount of child support due," Julia's action was unsuccessful and therefore she was not entitled to an award of attorney's fees.

legal fees is that they weren't necessary at all after the settlement offer or that they're not legally—that your client isn't legally entitled to them. I had no complaint about the amount of your bills or Mr. Langford or Ms. Taylor. And the point you were making about mine—and as an attorney I can say I think I was pretty impressed that you could try this case for the amount that you billed her.

Instead, Ronald challenged the entirety of the fees and costs Julia sought as unnecessary—and therefore unreasonable—because he was

voluntarily paying the guidelines amount of child support. We address this argument below.

8. Paragraph twelve of the trial court's findings of fact and conclusions of law provides as follows: "Given that [Ronald] was already paying timely and voluntarily the exact child support amount awarded by the Court after trial, none of the attorneys' fees and costs incurred by [Julia] in her motion to modify were reasonable and necessary."

We conclude the trial court correctly recognized Ronald's contractual obligation to pay Julia's attorney's fees and costs when a new child support order was "formalized." However, it erred in determining Julia was not entitled to any attorney's fees for bringing an action for that very purpose because Ronald had been voluntarily paying child support in accordance with the statutory guidelines.

As an initial matter, nothing in the Decree provides that Ronald's obligation to pay attorney's fees and costs in a subsequent motion to modify child support is extinguished upon his voluntary payment of additional child support. Nor is there any requirement that Julia be successful in her suit to modify the child support. Hence, the trial court erred in concluding Julia was not entitled to any attorney's fees because Ronald had been voluntarily paying additional child support and Julia's action was therefore "unsuccessful." [9]

Additionally, under the circumstances, Julia was entitled to pursue child support in excess of the presumptive guidelines. Although Ronald had been paying additional child support, his monthly earnings exceeded $6,000 per month and therefore, the trial court could have increased his support obligation above the statutory guidelines if a variance was in fact in the children's best interest. *See* TEX. FAM. CODE ANN. §§ 154.123, 154.126 (Vernon 2002). Although the guideline amounts are presumed to be reasonable, Ronald's voluntary payment of that amount does not necessarily mean he was paying an amount of child support consistent with the best interests of the children. *See id.* § 154.122(a); *Clark v. Jamison*, 874 S.W.2d 312, 316–17 (Tex.App.-Houston [14th Dist.] 1994, no writ). Indeed, the trial court could not have concluded Ron-

ald was paying the "appropriate amount" of child support until after a hearing on that very issue.

Further, as a substantive matter, the trial court erred in concluding a court order was not necessary because voluntary payments were being made. In Texas, agreements concerning child support must be approved by the court. TEX. FAM. CODE ANN. § 154.124 (Vernon 2002); *Williams v. Patton*, 821 S.W.2d 141, 143–44 (Tex.1991). Thus, even if Julia and Ronald had agreed to the amount of child support being paid, Julia would have no legal recourse in the event Ronald ceased paying voluntarily. Without an order, Julia would be unable to obtain an arrearages judgment or a wage withholding order and enforcement by contempt would not be available. It was therefore incumbent upon Julia to obtain a court order to ensure that the child support obligation was legally enforceable.

In sum, we conclude Ronald's voluntary child support payments did not abrogate Julia's contractual right to attorney's fees and costs for bringing an action to modify child support, nor did it obviate the need for a court order. Accordingly, the trial court erred in concluding that, because Ronald voluntarily paid support in accordance with the statutory guidelines, Julia was not entitled to any attorney's fees and costs under the Decree.

## B. UNREASONABLE AND EXCESSIVE DEMAND

In paragraph fifteen of its findings of fact and conclusions of law, the trial court stated as follows:

15. As a separate and independent ground for its judgment, the Court finds that [Julia's] attempt to gain

---

9. In any event, Julia was successful because the trial court's order increased the amount

of child support Ronald was required to pay from $200 per month to $1,350 per month.

child support of as much as $5,000 per month ([Julia's] pre-trial demand) and at least $2,500 per month ([Julia's] demand at the close of trial) constituted an unreasonable and excessive demand under Texas law.... In the instant case, [Julia's] claim for above-guideline support was a clearly "excessive demand," and [Julia] is entitled to no attorney's fees and costs under the Decree Attorney Fee Provision.

On appeal, Julia contends that because Ronald failed to plead the affirmative defense of unreasonable and excessive demand, it was waived. She also contends the defense does not apply here; the attorney's fees provision does not require that a demand be made; no demand was made; and, if a demand was made, it was not made unreasonably or in bad faith.

■ A party must affirmatively assert excessive demand as a defense to a claim for attorney's fees. *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.,* 101 S.W.3d 619, 627–28 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (citing *Essex Crane Rental Corp. v. Striland Constr. Co.,* 753 S.W.2d 751, 758 (Tex.App.-Dallas 1988, writ denied)); *Tuthill v. Southwestern Pub. Serv. Co.,* 614 S.W.2d 205, 212 (Tex.App.-Amarillo 1981, writ ref'd n.r.e.). Here, Ronald did not plead excessive demand as an affirmative defense and the record does not reflect the issue was tried by consent; therefore, we hold it was waived.[10] *See* TEX.R. CIV. P. 94; *Tacon Mech. Contractors, Inc. v. Grant Sheet Metal,* 889 S.W.2d 666, 671 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

Consequently, the trial court erred in determining that Julia's claim for child support in excess of the statutory guidelines constituted an excessive demand.

## C. SEGREGATION OF ATTORNEY'S FEES

Lastly, Julia contends she is entitled to all the attorney's fees and costs expended in the underlying suit, not just those expended on the modification of child support, because the child support claims were inextricably intertwined with her other financial claims and with Ronald's counterclaims, and thus, were inseparable as a matter of law.[11] As we explain below, we agree in part and disagree in part.

After the trial court entered judgment that Julia was not entitled to any attorney's fees under the Decree's attorney's fees provision, Julia moved to modify, correct, or reform the judgment, arguing that she was entitled to all of her attorney's fees because the claims were inextricably intertwined. Ronald disputed her assertion, pointing out that the testimony of Julia's attorneys indicated they were able to segregate time expended on the modification action from time expended on other issues raised at trial. In its findings of fact and conclusions of law, the trial court rejected Julia's "inextricably intertwined" argument.

In its findings, the trial court acknowledged Julia's argument at trial that she was entitled to "all of her attorneys' fees expended in this matter, whether or not related to the portion of the action in which she sought to increase child support." However, the trial court found that the attorney's fees provision "applies only

10. Because Ronald waived this affirmative defense, we find it unnecessary to decide whether the doctrine of unreasonable or excessive demand is applicable to a suit for modification of child support.

11. In total, Julia's attorney's fees amounted to $42,465.79.

to the portion of the present action in which [Julia] sought to modify child support, not to her other financial claims or her defense against [Ronald's] counter-petition."

By its express language, the attorney's fees provision is limited to attorney's fees and costs incurred in "a subsequent motion to modify child support." Thus, the trial court was correct in determining that the provision entitled Julia to attorney's fees and costs only on a suit to modify child support. Accordingly, we examine whether Julia's child support modification claim is inextricably intertwined with her other financial claims and her defense of Ronald's various counterclaims.

■■■ When a plaintiff seeks to recover attorney's fees in a case involving multiple claims, at least one of which supports an award of fees and at least one of which does not, the plaintiff must offer evidence segregating attorney's fees among the various claims. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex.1991). An exception to this duty to segregate arises when the services rendered are in connection with claims arising out of the same facts or transaction and their prosecution or defense entails proof or denial of essentially the same facts. *Id.* at 11.[12] Under those circumstances, the party suing for attorney's fees may recover the entire amount for all claims that satisfy this exception. *Sterling,* 822 S.W.2d at 12.

■■■ To determine whether claims are inextricably intertwined, a court must examine the facts alleged in support of the claims. *See id.* at 11–12. Even if the claims arise out of the same transaction, if the prosecution or defense does not entail proof or denial of essentially the same facts, the exception does not apply. *See Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 687 (Tex.App.-Houston [14th Dist.] 2004, no pet. h.). We review the trial court's determination of this issue de novo. *See id.; see also Houston Livestock Show & Rodeo, Inc. v. Hamrick,* 125 S.W.3d 555, 585 (Tex. App.-Austin 2003, no pet.) (stating, "[w]hether fees can be segregated between various claims and parties is a question for the court" and using language appropriate to a de novo review).[13]

Here, in addition to an increase in Ronald's child support obligation, Julia asserted other financial claims, seeking enforcement of previous judgments, including a judgment on various debts and obligations Ronald owed but failed to pay, such as credit card debts, income tax liabilities, and unpaid medical expenses. Julia also requested wage withholding orders for payment of additional judgments awarded in the Decree. Ronald's counterclaims included: (1) a decrease in his child support obligation, (2) offsets for direct payments made to Julia "in the form of child support or otherwise," (3) a change in conservatorship, (4) a modification of the parties' relative rights and duties, (5) a change in the

12. This exception is commonly referred to as the "inextricably intertwined" exception. *See Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 684, n. 1 (Tex. App.-Houston [14th Dist.] 2004, no pet. h.).

13. In *Stewart Title v. Sterling,* the Texas Supreme Court reversed the trial court's implied segregation determination and addressed the appropriate remedy when "an appellate court determines that segregation was required."

*Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). Rather than remanding to the court of appeals to conduct an analysis of the sufficiency of the evidence to support the trial court's segregation determination, the *Sterling* court held that "[f]ollowing a review of the record, we conclude that the attorney's fees are capable of segregation." *Id.* at 12. Accordingly, we conduct a de novo review of the trial court's segregation determination.

terms of possession and access, (6) a restriction on the children's passports, and (7) a restriction on the children's county of residence.

To support the assertion that her claims were inextricably intertwined, Julia, contends some of the same factors the trial court could consider when determining an appropriate amount of child support are at issue in all her claims. In particular, Julia points to several factors, listed in section 154.123(b) of the Family Code, that the trial court may consider in determining whether to deviate from the child support guidelines.[14] Specifically, Julia relies on the following factors:

- debts or debt service Julia assumed;
- the ability of the parents to contribute to the support of the child; and
- any other reason consistent with the best interest of the children, taking into consideration the circumstances of the parents.

Consequently, Julia reasons that all of the proof in the case was "essential" to the modification of child support action. Julia also argues that, like the child support action, resolution of Ronald's counterclaims regarding the children required the court to determine whether a modification was in the best interests of the children and whether the circumstances of the chil-

dren or the parties had materially and substantially changed. *See* TEX. FAM. CODE ANN. § 156.101 (Vernon 2002) (establishing grounds for modification of conservatorship, possession, and access).

■ We conclude Julia was not required to segregate attorney's fees and costs incurred in pursuing her action to modify child support from those incurred in defending Ronald's counterclaims challenging the amount of child support and his claims for offsets on payments made directly to Julia. Those counterclaims directly challenged Julia's action to increase Ronald's child support obligation, and she had to defeat the counterclaims to prevail on her motion to modify child support. *See, e.g., Willis v. Donnelly*, 118 S.W.3d 10, 46–47 (Tex.App.-Houston [14th Dist.] 2003, pet. filed) (holding successful party in action to recover balance due on promissory note was also entitled to attorney's fees incurred in defeating affirmative defenses to action and usury counterclaim); *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 873–74 (Tex.App.-Dallas 1989, writ denied) (concluding fees incurred in defense of counterclaim are recoverable when facts necessary for plaintiff to recover on its claim also serve to defeat the counterclaim); *Schepps Grocery Co. v. Burroughs Corp.*, 635 S.W.2d 606, 611 (Tex.App.-Houston [14th Dist.] 1982, no writ) ("A

14. In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court must consider evidence of all relevant factors, including:

- the ages and needs of the children;
- the ability of the parents to contribute to the support of the children;
- any financial resources available for the support of the children;
- the amount of time of possession of and access to the children;
- the amount of the obligee's net resources, including earning potential;

- child care expenses necessary to enable either party to maintain gainful employment;
- whether either party has the managing conservatorship or actual physical custody of another child;
. . .
- the cost of travel in order to exercise possession of and access to the children;
. . .
- any other reason consistent with the best interest of the children, taking into consideration the circumstances of the parents.

TEX. FAM. CODE ANN. § 154.123(b) (Vernon 2002).

party may properly recover for legal services in prosecuting its claim although the same services also relate to defending a counterclaim"). Therefore, Julia is entitled to attorney's fees and costs for defending against Ronald's counterclaims pertaining to the child support obligation and his requested offsets for direct payments.

■ We cannot say, however, that the factual basis necessary to support Julia's child support modification claims are so inextricably intertwined with her defense against Ronald's counterclaims relating to conservatorship, possession, and access and her other financial claims, as to fall within the exception to the segregation requirement. First, Julia does not offer an explanation of how her other financial claims—which include claims for various credit card debts and income tax liabilities—mirror her child support claims. Although Julia's assumption of certain debts Ronald failed to pay is a factor the trial court may consider when determining whether to deviate from the child support guidelines, this is not enough to establish that the claims were inextricably intertwined.

Likewise, although the factors the trial court may consider when deciding whether to deviate from the statutory guidelines may overlap to some extent with the factors it can consider in determining the issues raised in Ronald's conservatorship, possession, and access counterclaims, overlapping factors or elements is not the standard. Julia fails to cite facts that are the bases of both her child support modification claims and her defense of Ronald's counterclaims. Indeed, Julia's counsel conceded at oral argument that she presented no testimony at trial to support her contention the claims were inextricably intertwined.

Finally, at trial, Julia's attorneys conceded their ability to segregate the percentage of fees expended on the child support action. One of Julia's attorneys, Thomas Conner, estimated that about one-third of his fees were expended on child support modification: "I would probably put it—if I was going to try to make a real good estimation, 30 percent on modification of support, 30 percent on modification of the other children issues, and 30 percent on the balance of everything else. A third, a third, a third." Another of Julia's attorneys, Gary Langford, testified on direct examination that about half of his fees were expended on child support modification.[15] Thus, Julia's attorneys were able to segregate the attorney's fees and costs associated with the parties' various claims and counterclaims.

■ In sum, we conclude that Julia's defense of Ronald's counterclaims to decrease child support and his claim for offsets for payments made directly to Julia, are inextricably intertwined with Julia's child support modification claims. Those claims arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *See Air Routing Int'l Corp. (Canada)*, 150 S.W.3d at 694–700. However, Julia has failed to establish that her other financial claims against Ronald and her defense of his counterclaims relating to conservatorship, possession, and access are inextricably intertwined with her child support modification claims. *See Young v. Neatherlin*, 102 S.W.3d 415, 420 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (holding claims were not inextricably intertwined because evidence in record did not suggest that claims were so interrelated that their prosecution or defense entailed proof of essentially the

15. Mr. Langford offered no testimony regarding the percentage of attorney's fees billed by

Jacqueline Taylor, another attorney in his office, for the motion to modify child support.

same facts). Therefore, under the Decree's attorney's fees provision, Julia is entitled to reasonable and necessary attorney's fees and costs incurred in her action to modify child support, and fees and costs incurred in her defense of Ronald's counterclaims to decrease child support and for credit on payments made directly to Julia. However, Julia is not entitled to attorney's fees and costs incurred in connection with her other financial claims and her defense of Ronald's counterclaims relating to conservatorship, possession, and access. We therefore remand to the trial court for a determination of Julia's attorney's fees and costs. *See Sterling,* 822 S.W.2d at 12.[16]

Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings in accordance with this opinion.

---

**16.** Given our disposition of the issues, it is not necessary that we address Julia's remaining legal and factual insufficiency challenges to the trial court's findings of fact and conclusions of law. However, we do briefly address Julia's complaints regarding paragraph seventeen, which provides as follows:

The parties intended the Decree Attorney Fee Provision to apply to "a" motion to modify child support upon [Ronald's] becoming employed. [Julia's] motion to mod-

ify child support in the present action exhausts this Decree Attorney Fee Provision, and [Ronald] bears no further responsibility or liability under that Provision, whether construed as a contract, an Order of this Court, or both.

Julia contends this is an advisory opinion and is an improper legal conclusion, and further claims it is not supported by legally or factually sufficient evidence. We agree the issue was not ripe for determination.