IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-08-00202-CV

 

In re
Kevin Kubankin

 

 



Original Proceeding

 

 



Opinion



 

            Kevin Kubankin seeks a writ of
mandamus compelling Respondent, the Honorable Al Scoggins, Judge of the 378th
District Court of Ellis County, to grant his petition for writ of habeas corpus
filed under section 153.371 of the Family Code by which Kubankin seeks the
return of his son from the child’s mother.  We will conditionally grant relief.

Background

            Kubankin and his former wife Jessica
Farmer were divorced in 2003.  Under the divorce decree, they were designated
joint managing conservators with Farmer having the “exclusive  .  .  .  right to
determine the legal domicile of the children.”  Apparently, they decided on an
annual basis to modify the custody provisions of the decree, and Respondent
signed agreed modification orders accordingly.[1]

            In January 2008, Kubankin and Farmer submitted
their most recent agreed order to Respondent.  This order appoints Kubankin as
managing conservator of G.M.K., the child who is the subject of the underlying
habeas proceeding.  Among other rights, this order gives Kubankin “the right to
have physical possession” of G.M.K., subject to Farmer’s visitation rights. 
The agreed order grants Farmer the right to possession of G.M.K. and his
siblings during certain holidays, including “the Spring Break Holiday of every
year.”

            Kubankin lived in Ohio at the time
Respondent signed the agreed order and continues to reside there.  Farmer
traveled to Ohio in March during the Spring Break holiday of the Waxahachie Independent School District, which began on March 17.  She spent that week in a
hotel and visited with her sons during the week, although their Spring Break
did not begin until Friday, March 21.

            Farmer testified that she had
conversations with G.M.K. both before and during Spring Break about his
unhappiness with his living arrangements.  She talked to Kubankin about the
possibility of G.M.K. moving back to Texas with her.  Kubankin told her that he
would need to think about it.  Farmer and the children drove back to Texas on March 21.  The parties dispute whether at that point Kubankin had agreed to any
change in the custody arrangements.

            Farmer emailed Kubankin a proposed
modification order on March 23.  This proposed order, among other things,
would: (1) designate Farmer as G.M.K.’s managing conservator, (2) give her the
right to physical possession of him, subject to Kubankin’s visitation rights,
and (3) require Kubankin to make monthly child support payments, which the
January 2008 order did not require.  Kubankin responded with an email telling
Farmer that the proposed order “looks fine” except for the child support
provisions.

            Farmer flew with G.M.K.’s younger
brother back to Ohio on March 26.  However, G.M.K. remained in Texas, where she had enrolled him in a Waxahachie ISD elementary school.

            Kubankin filed his habeas petition on
April 3, and Respondent set the matter for hearing on April 25.  At the
conclusion of the hearing, Respondent announced that he was denying the
petition because Kubankin had agreed to a change in custody, he allowed G.M.K.
to be enrolled in the Waxahachie school, and, based on the case history, “it
isn’t good for this kid to be bounced back and forth between these school
districts like that.”

            Respondent signed an order denying the
petition without significant elaboration regarding the reasons for the
decision.  However, Respondent also prepared written findings of fact and
conclusions of law.  Among the noteworthy findings, Respondent found that:

(1) the 2003 divorce decree named Kubankin and
Farmer as joint managing conservators;

 

(2) the decree gave Farmer the exclusive right “to
determine the legal domicile of the children”;

 

(3) the decree did not award either party “the
exclusive right to establish the primary residence of [G.M.K.]”;

 

(4) none of the subsequent agreed modification
orders altered these aspects of the divorce decree;

 

(5) the January 2008 order gives Kubankin the
right to physical possession of G.M.K. and the right to designate his residence;

 

(6) the January 2008 order is “insufficiently
specific and ambiguous as to the party who has the legal right to determine the
primary residence of [G.M.K.]”;

 

(7) the parties entered “a voluntary agreement”
that G.M.K. should return to live with Farmer in Texas in contravention of the
January 2008 agreed order;

 

(8) “The child’s present circumstances while
living with [Kubankin] significantly impaired the child’s physical health or
emotional development”; and

 

(9) “The child’s physical and emotional well-being
and development would be fostered by living with [Farmer] and attending
counseling sessions with the same mental health care providers who treated
child previously.”

 

            Consistent with these findings,
Respondent made the following pertinent conclusions of law:

(1) “Farmer has the right to determine the legal
domicile of [G.M.K.]”;

 

(2) “Neither party has the exclusive right to
establish the primary residence of [G.M.K.]”;

 

(3) On the date Kubankin filed his habeas
petition, “he did not have the present right to physical possession of [G.M.K.]”;

 

(4) “The court should take the voluntary agreement
between the parties into consideration in deciding who should be the managing
conservator and whether the existing order of January 8, 2008 should be
changed”;

 

(5) It is in the best interest of G.M.K. that
Farmer retains the right to determine his legal domicile;

 

(6) The return of G.M.K. to Kubankin “will
significantly impair the child’s physical health or emotional development”; and

 

(7) It is in the best interest of G.M.K. to remain
in Farmer’s physical possession.

 

Indigence

            Before we reach the merits of
Kubankin’s mandamus petition, we address his claim of indigence.

The test for determining indigence is
straightforward: “Does the record as a whole show by a preponderance of the
evidence that the applicant would be unable to pay the costs, or a part
thereof, or give security therefor, if he really wanted to and made a
good-faith effort to do so?”

 

Higgins v. Randall County Sheriff’s Office, 51 Tex. Sup. Ct. J. 911, 912, 2008 WL 2069834,
at *2 (Tex. May 16, 2008) (quoting Pinchback v. Hockless, 139 Tex. 536, 164 S.W.2d 19, 20 (1942)).

            The purpose of Rule 20.1 is to permit
parties to proceed without paying filing fees if they are unable to do so,
and we have long interpreted the Rules of Appellate Procedure liberally in
favor of preserving appellate rights. See Verburgt v. Dorner, 959 S.W.2d
615, 616-17 (Tex. 1997); Jones v. Stayman, 747 S.W.2d 369, 370 (Tex. 1987) (“Indigency provisions, like other appellate rules, have long been liberally
construed in favor of a right to appeal.”).

 

Id., 51
 Tex. Sup. Ct. J. at 913-14, 2008 WL 2069834, at *4.

            Here, Kubankin states in his indigence
affidavit that he has “bi-weekly” income of $800.  His spouse has no income. 
He owns a 1997 Dodge Caravan but no other property.  He listed monthly expenses
of $1,278, including $332 in child support.  He paid the court reporter $600
for preparation of the reporter’s record in this proceeding.  His attorney has
included a statement that he is not providing free legal services or legal
services based on a contingent fee contract and that he has not agreed to pay
or advance court costs on Kubankin’s behalf.  See Tex. R. App. P. 20.1(b) (specifying
contents of indigence affidavit).  Kubankin’s attorney testified in the trial
court that Kubankin had incurred approximately $1,400 in attorney’s fees through
the date of the hearing on the habeas petition and counsel would charge an
additional $2,000 to pursue a mandamus petition in this Court.

            In response, Farmer argues that
Kubankin’s child support obligation should not be considered because Kubankin
did not pay child support for either of his sons from January to March 2008,
when both sons lived with him.  Otherwise, she does not dispute any of the
figures provided in his affidavit.

            Liberally construing the indigence
requirements in favor of the right to appellate review, when we balance
Kubankin’s monthly net income of approximately $1,475[2]
against his monthly expenses (even setting aside the child support figure), the
legal fees he owes, and the fees he has already paid for preparation of the
reporter’s record, we conclude that he established by a preponderance of the
evidence that he is unable to pay this Court’s filing fees.  See Higgins,
51 Tex. Sup. Ct. J. at 912, 2008 WL 2069834, at *2.

Family Code Habeas Petition

            Section 157.372(a) of the Family Code
provides:

            Subject to Chapter 152 and the
Parental Kidnapping Prevention Act (28 U.S.C. Section 1738A), if the right to
possession of a child is governed by a court order, the court in a habeas
corpus proceeding involving the right to possession of the child shall compel
return of the child to the relator only if the court finds that the relator is
entitled to possession under the order.

 

Tex. Fam. Code Ann. § 157.372(a) (Vernon 2002).  Chapter 157 provides
exceptions where: (1) the relator voluntarily relinquished actual possession of
the child for not less than six months; or (2) “there is a serious immediate
question concerning the welfare of the child.”  Id. §§ 157.373, 157.374
(Vernon 2002).

            “Upon proof of the prior order, absent
dire emergency  .  .  ., the grant of the writ of habeas corpus should be
automatic, immediate, and ministerial, based upon proof of the bare legal right
to possession.”  Schoenfeld v. Onion, 647 S.W.2d 954, 955 (Tex. 1983) (orig. proceeding) (per curiam); accord In re deFilippi, 235 S.W.3d 319,
322 (Tex. App.—San Antonio 2007, orig. proceeding) (per curiam); In re Lau,
89 S.W.3d 757, 759 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).  “The
trial court may not deny the writ based on the best interests of the child.”  Schoenfeld,
647 S.W.2d at 955; accord deFilippi, 235 S.W.3d at 322.

            Mandamus relief is available to
correct the erroneous denial of a habeas petition seeking possession of a child
under Chapter 157 of the Family Code.  deFilippi, 235 S.W.3d at 322; Lau,
89 S.W.3d at 758; see also Shoenfeld, 647 S.W.2d at 955-56.

 

Entitlement to Possession

            To obtain habeas relief under section
157.372(a), Kubankin must first establish that he is entitled to possession of
his son under a court order.  See Tex.
Fam. Code Ann. § 157.372(a).  In that regard, the only relevant court
order is the January 2008 order which gives Kubankin “the right to have
physical possession” of G.M.K.

            Nevertheless, Farmer contends, and
Respondent apparently agreed, that this order was superseded by the parties’
oral agreement to modify the order.[3]  We
disagree.  Parties to child custody orders doubtlessly effect de facto
modifications of such orders by agreement and without court approval on a
regular basis.  The Family Code encourages parents to make an “agreed parenting
plan” regarding conservatorship and possession of the child.  See Tex. Fam. Code Ann. § 153.007 (Vernon Supp. 2007); see also Tex. Fam. Code
Ann. § 154.124 (Vernon Supp. 2007) (providing for “agreement concerning
support”).  But court approval has always been required to make such agreements
enforceable.

            Sections 153.007 and 154.124 are very
similar in their language regarding the need for court approval of such
agreements.  But while there is little case law discussing this requirement
under section 153.007, there are some relevant decisions under section 154.124.

            Referring to section 154.124, the
Austin Court of Appeals has said “the family code still requires a court order
to modify child support.”  Gonzalez v. Tippit, 167 S.W.3d 536, 542 (Tex. App.—Austin 2005, no pet.).  According to the Fourteenth Court of Appeals:

            In Texas, the Legislature has
explicitly required that parental agreements concerning child support be
expressly approved by the court based on whether the agreement is in the child’s
best interest.  Accordingly, agreements by parents to reduce or modify
court-ordered child support obligations without such approval violate public
policy and are unenforceable.

  

Sudan v. Sudan, 145 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2004)
(footnotes omitted), rev’d on other grounds, 199 S.W.3d 291 (Tex. 2006) (per curiam); see also Kurtz v. Kurtz, 158 S.W.3d 12, 20 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (“agreements concerning child support must be
approved by the court”).

            And referring to a previous version of
this statute, the Supreme Court has held:

            The legislature intended that courts
exercise independent judgment in matters affecting children, including the
support obligation.  In addition to denying the district court the authority to
forgive child support arrearages under section 14.41(d), the legislature has also
prohibited self-help by the obligor and obligee in prospectively modifying
court-ordered child support without court approval.  Tex. Fam. Code §
14.08(a).  Furthermore, the legislature has expressly required that parental
agreements concerning child support be approved by the court, which can accept
or reject the agreement depending on whether or not it is in the child’s best
interest.  Tex. Fam. Code § 14.06(a)-(d).  These provisions of the Texas Family
Code indicate that the legislature intended that the court closely supervise
child support proceedings to guarantee that the best interest of the child is
always considered.

 

Williams v. Patton, 821 S.W.2d 141, 143-44 (Tex. 1991).

            We hold that these decisions apply
with equal force to agreements regarding conservatorship and possession of a
child under section 153.007.  Therefore, Kubankin’s and Farmer’s purported
agreement to modify the January 2008 order remained unenforceable until it had
been approved by Respondent in a modification proceeding under Chapter 156 of
the Family Code.  See Williams, 821 S.W.2d at 143-44; Gonzalez,
167 S.W.3d at 542; Kurtz, 158 S.W.3d at 20; Sudan, 145 S.W.3d at
285.

            The January 2008 order gave Kubankin
“the right to have physical possession” of G.M.K.  Thus, Kubankin established
that he was entitled to possession of his son under a court order.  See Tex. Fam. Code Ann. § 157.372(a).

Voluntary Relinquishment

            Notwithstanding the provisions of this
court order, section 157.373(a) gives a trial court discretion to “compel or
refuse to order return of the child” if the relator voluntarily relinquished
actual possession of the child for not less than six months.  Id. § 157.373(a). 
Thus, even assuming Kubankin initially agreed to the proposed change in custody
arrangements, Respondent could not rely on this acquiescence as a basis for
denying the habeas petition until Kubankin had acquiesced for a period of six
months.[4]  This
purported agreement had been “in effect” for little more than thirty days at
the time of the hearing.  Thus, permitting this “agreement” to control the
resolution of Kubankin’s habeas petition would render the six-month requirement
of section 157.373 meaningless.  See Mid-Century Ins. Co. of Tex. v. Ademaj, 243 S.W.3d 618, 621-22 (Tex. 2007) (declining to construe statute in a
manner which would render it meaningless).

 

Serious Immediate Question Concerning Child’s
Welfare

            Section 157.374 authorizes a trial
court to “render an appropriate temporary order if there is a serious immediate
question concerning the welfare of the child.”  Tex. Fam. Code Ann. § 157.374.

            Respondent found that G.M.K.’s living
circumstances in Ohio “significantly impaired the child’s physical health or
emotional development” and that his “physical and emotional well-being and
development would be fostered by living with [Farmer] and attending counseling
sessions with the same mental health care providers who treated child
previously.”  Respondent concluded that ordering G.M.K.’s return to live with
Kubankin in Ohio would “significantly impair the child’s physical health or
emotional development.”

            However, to justify a denial of habeas
relief, a court must find that “there is a serious immediate question
concerning the welfare of the child.”  Id. (emphasis added).  This means
that there must be evidence of an “’immediate danger of physical or emotional
harm’ which requires immediate action to protect the child.”  Forbes v.
Wettman, 598 S.W.2d 231, 232 (Tex. 1980) (orig. proceeding) (citing McElreath
v. Stewart, 545 S.W.2d 955, 958 (Tex. 1977) (orig. proceeding)); accord
deFilippi, 235 S.W.3d at 324; Lau, 89 S.W.3d at 759.

            Texas appellate courts have repeatedly
held that a serious and immediate question concerning the children’s welfare
requires proof of an imminent danger to the children’s physical or emotional
well-being, or, stated another way, a dire emergency.  “Unless it was shown,
and the trial court found, that the children were in imminent danger of
physical or emotional harm and that immediate action was necessary to protect
[them], the trial court [is] without authority to deny the writ.”

 

deFilippi,
235 S.W.3d at 324 (quoting Grimes v. Flores, 717 S.W.2d 949, 952 (Tex.
App.—San Antonio 1986, orig. proceeding)); see also Schoenfeld, 647
S.W.2d at 955; Forbes, 598 S.W.2d at 232; McElreath, 545 S.W.2d at
958.

            Here, there is no evidence of a “dire
emergency” which poses an “immediate danger of physical or emotional harm” to
G.B.K.  See Schoenfeld, 647 S.W.2d at 955; Forbes, 598 S.W.2d at
232; McElreath, 545 S.W.2d at 958; deFilippi, 235 S.W.3d at
323-26.

Other Considerations

            Respondent also emphasized that the
wording of the parties’ divorce decree and subsequent modification orders never
explicitly gave either party “the exclusive right to establish the primary
residence of [G.M.K.].”[5]  See
Tex. Fam. Code Ann. §§ 153.132(1),
153.134(b)(1) (Vernon Supp. 2007).  The fact that these various orders do not
contain the precise language of the Family Code is not dispositive.  For
example, the divorce decree named the parties as joint managing conservators
but gave Farmer “the exclusive right to determine the legal domicile of the
children.”  This provision was included within a listing of seven “exclusive
rights” given Farmer which closely correspond to the exclusive rights given a
sole managing conservator by section 153.132.  See Tex. Fam. Code Ann. § 153.132.  Thus,
the only reasonable construction of this provision is that the divorce decree
gave Farmer the exclusive right “to designate the primary residence of the
child[ren].”  Id. § 153.132(1), see also id. § 153.134(b)(1)
(order establishing joint managing conservatorship “shall  .  .  .  designate
the conservator who has the exclusive right to determine the primary residence
of the child”).

            The January 2008 order does not use
the term “exclusive” to define either party’s rights and duties.  However, read
as a whole, this order in essence appoints Kubankin as sole managing
conservator of G.M.K.  For example, the order appoints Kubankin “as Managing
Conservator” of G.M.K. but further provides that Farmer “will remain the
Managing Conservator of [their daughter].”  The order gives Farmer limited
visitation rights.  And the order gives Kubankin “the right to have physical
possession” of G.M.K.  Therefore, we hold that the January 2008 order appointed
Kubankin as sole managing conservator of G.M.K., and thus, Kubankin has the
exclusive right “to designate the primary residence of the child.”  Id. § 153.132(1).

Conclusion

            Kubankin was entitled to possession of
G.M.K. under the January 2008 order.  The record contains no evidence that he
voluntarily relinquished actual possession of G.M.K. for not less than six
months or that “there is a serious immediate question concerning the welfare of
the child.”  Therefore, Respondent abused his discretion by denying Kubankin’s
habeas petition.

            We conditionally grant the requested
writ.  The writ will issue only if Respondent fails to advise this Court in
writing within fourteen days after the date of this opinion that he has vacated
his previous order and instead granted Kubankin’s habeas petition.

PER CURIAM

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice Reyna

(Chief Justice Gray dissenting with note)*

Petition conditionally
granted

Opinion delivered and
filed July 9, 2008

[OT06]

*           (“Chief
Justice Gray dissents.  A separate opinion will not issue.  He notes, however,
that this Court’s judgment may become moot if the trial court renders and signs
a modification order that documents the parties’ agreement regarding the right
to possession of the child before the child is transferred back to Ohio where
he is not getting the counseling the trial court has already determined that it
would be in the child’s best interest to receive immediately, and which he is
currently receiving in Ellis  County.”)

 









[1]
              The docket sheet reflects that
agreed modification orders were signed by the court in 2004, 2005, 2006, 2007,
and 2008.





[2]
              We arrived at this figure by
multiplying Kubankin’s $800 bi-weekly income times twenty-six, then dividing by
twelve months, resulting in gross monthly income of approximately $1,733, then
applying the Attorney General’s 2008 Tax Chart for calculating net monthly
income for child support.





[3]
              Specifically, Farmer states,
“Relator’s legal right to possession of the child under the January 8, 2008
order was modified by agreement.”

 





[4]
              We readily acknowledge that
this 6-month requirement may lead to results which are not in the best interest
of a child, particularly if a parent with the right to possession waivers on
the issue of whether he really wants to give up his possessory rights. 
However, the best interest of the child is not a consideration in these habeas
proceedings.  Schoenfeld v. Onion, 647 S.W.2d 954, 955 (Tex. 1983) (orig. proceeding) (per curiam); accord In re deFilippi, 235 S.W.3d 319,
322 (Tex. App.—San Antonio 2007, orig. proceeding) (per curiam).





[5]
              Farmer testified that she
drafted the divorce decree and each of the subsequent modification orders
approved by Respondent.