Affirmed
and Memorandum Opinion filed April 6, 2010.

 

In
The

Fourteenth Court of Appeals



NO.
14-08-00351-CV



Julia L. Kurtz, Appellant 

v.

Ronald D. Kurtz, Appellee 



On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 95-00738



 

MEMORANDUM OPINION 

This is an appeal after a remand to determine
attorney’s fees and costs in an underlying child-support-modification action.  Appellant Julia L. Kurtz complains of the
trial court’s award, contending that the trial court erred by (1) failing to
follow this court’s opinion and mandate ordering segregation of her recoverable
attorney’s fees and costs, (2) failing to award all of her attorney’s fees and
costs, including appellate attorney’s fees and costs and the full amount of
attorney’s fees for the remand, and (3) failing to award prejudgment
interest.  For the reasons explained
below, we affirm.




I

            This
is the second appeal stemming from Julia’s 2001 petition to modify the
parent-child relationship.  The factual
and procedural background is detailed in this court’s resolution of Julia’s
first appeal in Kurtz v. Kurtz (“Kurtz I”), 158 S.W.3d 12, 15 (Tex.
App.—Houston [14th Dist.] 2004, pet. denied). 
 In Kurtz I, this court held that the trial court abused its discretion
by failing to award any attorney’s fees and costs to Julia in her action to
modify child support when the parties’ divorce decree expressly provided for
such an award.  Id. at 15.  The provision at issue reads as follows:  

            Further, RONALD D. KURTZ IS ORDERED
to pay the attorney’s fees and costs incurred by JULIA L. KURTZ in a subsequent
motion to modify child support.  The
attorney for JULIA L. KURTZ will provide to RONALD D. KURTZ on or before the
Order Modifying Prior Order is executed by the Court a statement of the fees
and costs incurred and IT IS ORDERED that RONALD D. KURZ will pay said fees and
costs within thirty (30) days from his receipt thereof.

 

            In
the first appeal, Julia contended that this provision unambiguously required
Ronald to pay all of her attorney’s fees and costs without regard to whether the
fees were reasonable or necessary.  Id. at 17.  We rejected this argument, holding that the
provision unambiguously required Ronald to pay Julia the attorney’s fees and costs
that were reasonable and necessary for her subsequent petition to modify child
support.  Id. at 18–20.  Because the
modification action included other unrelated claims and counterclaims, however,
we concluded that Julia was required to segregate her attorney’s fees relating
to her child-support modification claims and her defense of Ronald’s
counterclaims that were shown to be inextricably intertwined with the
modification action from those claims and counterclaims not related to the
child-support modification.  Id. at 24–25.  Specifically, we concluded: 

[U]nder the
Decree’s attorney’s fees provision, Julia is entitled to reasonable and
necessary attorney’s fees and costs incurred in her action to modify child
support, and fees and costs incurred in her defense of Ronald’s counterclaims
to decrease child support and for credit on payments made directly to
Julia.  However, Julia is not entitled to
attorney’s fees and costs incurred in connection with her other financial
claims and her defense of Ronald’s counterclaims relating to conservatorship,
possession, and access.  We therefore
remand to the trial court for a determination of Julia’s attorney’s fees and
costs.  

Id.
at 25.  In our
opinion, we noted that at trial Julia’s attorneys had conceded their ability to
segregate the percentage of fees relating to child-support modification.  See id.
at 24.  One of Julia’s
attorneys, Thomas Conner, testified that he estimated “30 percent” or “a third”
of his fees were expended on child-support modification, and another attorney,
Gary Langford, estimated that “about half” of his fees were expended on child-support
modification.  Id.  We also noted that Langford
did not testify concerning the segregation of the fees billed by another
attorney in his office, Jacqueline Taylor. 
Id. at n.15.  

            Ronald petitioned the Texas Supreme
Court to review our judgment.  The Supreme
Court denied Ronald’s petition.  On March
30, 2007, this court issued its mandate. 
In the mandate, we ordered the trial court’s judgment reversed and
remanded “for proceedings in accordance with the court’s opinion.”

            On remand, the trial court awarded Julia
reasonable and necessary attorney’s fees totaling $15,768.28 and post-judgment
interest.  The trial court denied all
other requested relief.  The trial court’s
findings of fact and conclusions of law reflected that the total amount of
attorney’s fees represented $12,740.00 for Julia’s fees and costs incurred in
her “action to modify child support and her defense of [Ronald’s] counterclaims
to decrease child support and for credit on payments made directly to Julia,”
$2,325.00 for reasonable and necessary attorney’s fees for retrial, and $703.28
for costs.  Julia moved for a new trial,
which the trial court denied after hearing argument.  This appeal followed.




II

A

            In her first issue, Julia contends
the trial court did not follow this court’s opinion and mandate in making its
award of attorney’s fees and costs to Julia. 
Specifically, Julia contends the trial court erroneously limited its
review to the evidence from the original trial and failed to award the amount
of attorney’s fees from the uncontroverted evidence she presented.  She also challenges several of the trial
court’s findings of fact, and contends the evidence of attorney’s fees is legally
and factually insufficient.  

B

            When an appellate court remands a
case and limits a subsequent trial to a particular issue, the trial court is
restricted to a determination of that particular issue.  Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986).  Thus, in a subsequent appeal, instructions
given to a trial court in the former appeal will be adhered to and
enforced.  Id.  In interpreting the
mandate of an appellate court, the courts should look not only to the mandate
itself but also to the appellate court’s opinion.  Id.
 Even if the remand is limited, however,
the trial court is given a reasonable amount of discretion to comply with the
mandate.  Austin Transp. Study Policy Advisory Comm. v. Sierra Club, 843
S.W.2d 683,  690
(Tex. App.—Austin 1992, writ denied).

            Findings of fact in a bench trial
have the same force and dignity as a jury’s verdict upon jury questions.  City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex. App.—Houston
[14th Dist.] 1977, writ ref’d n.r.e.).  When challenged on appeal, the findings are
not conclusive if there is a complete reporter’s record, as there is here.  Material P’ships, Inc. v. Ventura, 102
S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  The trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Barrientos v. Nava, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th
Dist.] 2002, no pet.).  

            A trial court’s findings are
reviewable for legal and factual sufficiency of the evidence by the same
standards that are applied in reviewing evidence supporting a jury’s
answer.  Catalina v. Blasdel, 881 S.W.2d 295, 297
(Tex. 1994); CA Partners v. Spears,
274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  If there is more than a scintilla of evidence
supporting a finding of fact, we will overrule a legal-sufficiency
challenge.  CA Partners, 274 S.W.3d at 69.  In reviewing a factual-sufficiency challenge,
we consider all of the evidence and will set aside a finding only if it is so
against the great weight and preponderance of the evidence as to be clearly
wrong and unjust.  Id.  

C

            Julia contends the trial court
mistakenly believed it was limited to the evidence from the first trial and
erroneously disregarded Julia’s segregation evidence provided on remand.  Further, citing Ragsdale v. Progressive Voters League, she contends the trial court
abused its discretion by not awarding the amount of segregated attorney’s fees she
sought because her evidence is “not contradicted by any other witness, or
attendant circumstances, and the same is clear, direct and positive, and free
from contradiction, inaccuracies, and circumstances tending to cast suspicion
thereon.”  See 801 S.W.2d 880, 882 (Tex. 1990) (per curiam).  Julia, an attorney who performed legal work
in both the underlying case and the remand, asserts that Ronald could have, but
did not, challenge her calculations or provided his own segregation theory; therefore,
her segregation calculations are uncontroverted and she is entitled to the
entire amount requested as a matter of law. 
Ronald, who is also an attorney and represented himself pro se at trial
and on appeal, disputes Julia’s contention that the evidence is uncontroverted
and otherwise satisfies the Ragsdale
factors.  We agree with Ronald.  

            On remand, Julia testified that she
conceived and applied the methodology used to segregate her recoverable
attorney’s fees.  She explained that her
methodology in segregating her attorney’s fees was to review the record,
motions, and orders, and count the number of pages that dealt with the
recoverable issues versus those that did not. 
She then calculated a percentage from those numbers and applied the
percentages to the legal fees she incurred. 
She testified that “it was a very time consuming process,” and she “spent
hours and hours just counting and determining percentages of what was
recoverable and what was not.”  She
testified that her methodology was the best method she could come up with,
given “the constraints” of this court’s opinion in Kurtz I.  Concerning trial
fees, Julia segregated the fees of Jacqueline Taylor and Gary Langford, who
originally represented her, and Thomas Conner of Conner & Lindamood, P.C.,
who later represented her.[1]  Julia put in evidence a summary of her
calculations of the segregated fees as well as the bills from her
attorneys.  She marked up the bills to
show the amount and percentage by which she reduced them.  The amount of segregated fees and expenses
Julia sought to recover for billings as of May 2007 was $4,963.26 for Taylor
and Langford and $28,833.27 for Conner & Lindamood, plus an additional
amount of $9,369.91 for Conner & Lindamood, up to the time of the hearing.  Additionally, Julia argued that she was
entitled to recover $1,300.00 for the testimony of an expert, Dr. Thomas
Steinbach, because he testified in the underlying case that Julia’s medical
condition was a factor supporting increased child support.  Both Conner and Langford testified that Julia’s
segregation methodology was appropriate and the calculations were accurate.  

            On cross-examination, Ronald sought
to discredit Julia’s segregation methodology and percentage calculations by eliciting
testimony from Conner and Langford concerning the disparity between the
percentages they offered originally and Julia’s percentages on remand.  For example, Langford testified that Julia
determined that the segregated amount of his firm’s fees attributable to
modification of child support was about 80 percent, but he acknowledged that in
the original trial he testified that this amount was about one-half of the
total fees.  Langford explained on
redirect that at the time of the underlying trial, he had not performed an
analysis and did not have the appellate mandate to determine what fees to
include.  On re-cross, however, Langford
acknowledged he originally testified that “I know what went into the bills themselves
and what I did on those bills toward the different parts of the case,” and “that’s
the reason I testified to my one-half.”

            Conner testified that he reviewed
this court’s opinion in Kurtz I and
Julia’s summary of her analysis.  He also
discussed with Julia her methodology for segregating the fees and found it
“appropriate and accurate as far as the Mandate from the Court of
Appeals.”  Conner also testified that he
prepared and presented to Ronald a demand for the attorney’s fees Julia
incurred in the underlying action pursuant to the divorce decree’s attorney’s
fees provision.  The demand letter, dated
August 15, 2002, reflected attorney’s fees for himself ($33,497.89), attorney’s
fees for Taylor and Langford ($5,667.90), and expert-witness fees for Dr.
Steinbach ($1,300.00), totaling $42,465.79.[2]
 On cross-examination, Conner agreed that
the August 2002 demand letter was for unsegregated fees.  Conner also acknowledged that in the
underlying trial in 2002 he testified that “a real good estimation” of the
percentage of his fees expended was “30 percent on modification of support, 30
percent on modification of the other children issues, and 30 percent on the
balance of everything else.  A third, a third, a third.” 
Conner denied that his recollection of the events was fresher in 2002
than in 2007, however, explaining that in 2002 he had not analyzed the billing,
and therefore when “[he] made that estimation, it wasn’t an estimation.”  Nevertheless, Conner acknowledged that in
2002 he understood the difference between modifying child support and obtaining
relief for other various financial obligations that might be included in a
divorce decree and the difference between the various thirds of the case.  He also conceded that the part of the case
dealing with child support would encompass both the claim to increase child
support and any subsidiary counterclaims relating to the amount of child
support, including Ronald’s counterclaim for offset for voluntary child-support
payments. Conner also acknowledged that he relied on Julia’s judgment in
performing the segregation, and conceded that to the extent Julia included more
fees in the segregated category, she stood to recover
more money.

            On appeal, Julia contends Conner’s
and Langford’s testimony concerning their segregation-percentage estimates in
2002 is not evidence of the segregation calculation this court required because
at that time they had not performed an actual segregation taking into account
the Kurtz I court’s instructions to
include Julia’s defense of Ronald’s counterclaims for offset and reduced child
support.  We are not persuaded by this
argument because the legal basis for including the counterclaims was not novel,
but was based on existing law, see Kurtz
I, 158 S.W.3d at 24–25, and Conner’s testimony reflected that he was
familiar with this law.  Further, both
Conner and Langford acknowledged in 2002 that they could segregate their fees,
as their testimony showed when they estimated the percentage of their fees
attributable to the child-support modification portion of the case.  Our supreme court has recognized that no more
precise proof is required.  See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 314 (Tex. 2006).  

            Ronald also sought to cast doubt on
Julia’s segregation calculations in other ways. 
For example, he points to a portion of Langford’s testimony in which Langford
acknowledged that most of the bills submitted for his and Taylor’s time were on
Taylor’s letterhead, but that they actually included billings for both his and
Taylor’s time.  Langford testified that
“probably” the only bill that was Taylor’s was a bill for one hour on one day
totaling $250, and the rest of the billing “more than likely” would have been for
his time because the time was billed at his rate of $200 per hour.  And, in an effort to demonstrate that—contrary
to Julia’s segregation percentages—custody and visitation issues were a
substantial part of the case, Ronald put into evidence Julia’s interrogatory answers
to show that Julia identified numerous witnesses designated to testify on
issues including custody and visitation. 
Ronald also put in evidence the excerpts of the trial testimony Julia initially
designated for her limited appeal of the attorney’s fees issue in the
underlying trial.  These excerpts consist
of 21 pages of testimony.[3]  

            Julia counters that any equivocation
in Langford’s testimony concerning his or Taylor’s billing relates only to who
billed the time, not the amount billed, and the billing attorney can be
determined by the hourly rate charged. 
Julia also argues that the number of witnesses listed in her
interrogatory response does not necessarily correlate to the number of
witnesses called or the amount of preparation required, and that such evidence should
not be a factor in the measure of the actual time the attorneys spent on the
tasks for which attorney’s fees are recoverable.  But the trial court, as the finder of fact,
was entitled to weigh the strength, if any, of the evidence and the witnesses’
credibility when considering the segregation issue.  See
Chapa, 212 S.W.3d at 313; Barrientos, 94 S.W.3d at 288. 

            Thus, Ronald presented some evidence
to controvert Julia’s segregation methodology and the percentage of time Julia
contended was spent on the claims and counterclaims related to child-support
modification as opposed to the unrelated claims and counterclaims.  Ronald also elicited testimony that Julia
performed the segregation herself and stood to gain by calculating and applying
a higher percentage of fees to be included in the segregation.  Further, Ronald was not required to offer an
alternative segregation methodology, as the burden was on Julia to offer
evidence segregating the attorney’s fees among the various claims.  See
Kurtz I, 158 S.W.3d at 22.  Based on the foregoing, we cannot say that
the evidence of Julia’s segregation of her attorney’s fees is “not contradicted
by any other witness, or attendant circumstances, and the same is clear, direct
and positive, and free from contradiction, inaccuracies, and circumstances
tending to cast suspicion thereon.”  See Ragsdale, 801 S.W.2d
at 882; Cullins v. Foster, 171 S.W.3d
521, 539–40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  

            Moreover, the Ragsdale court instructed that “[W]e do not mean to imply that in
every case when uncontradicted testimony is offered it mandates an award of the
amount claimed.”  Ragsdale, 171 S.W.3d at 882. The supreme court cautioned that “even though the evidence might
be uncontradicted, if it is unreasonable, incredible, or its belief is
questionable, then such evidence would only raise a fact issue to be determined
by the trier of fact.”  Id.  Here, the trial court could have concluded
that Julia’s page-counting methodology was unreasonable, incredible, or
questionable, and as such merely raised a fact issue.  Julia testified that it was the best method
she could come up with based on this court’s opinion and mandate, and all of
her attorneys testified that they agreed with her methodology and the accuracy
of the segregation she performed.  But Julia
does not point to any specific language in our opinion or in any legal
authority requiring or even suggesting such a methodology for segregating her
attorney’s fees.  Further, Julia offers no
evidence that the number of pages spent on child-support modification issues
actually corresponds to any discrete legal services that were required on those
claims and defenses as opposed to unrelated claims and defenses for which
attorney’s fees were not recoverable.  Therefore,
the trial court was not required to accept Julia’s segregation evidence even if
uncontradicted. 

            Having determined that the trial
court was not required to accept as a matter of law Julia’s segregation
evidence, we turn to Julia’s complaint that the trial court failed to follow
this court’s mandate by limiting itself to the evidence from the original
trial.  Specifically, she complains the
trial court erred in applying Conner’s testimony from the 2002 hearing that
about 30 percent of his time was spent on the child-support modification
portion of the case.  In its findings of
fact three, four, five, and six, the trial court found that Julia was entitled
to reasonable and necessary attorney’s fees of $12,740.00 for her action to
modify child support and her defense of Ronald’s counterclaims, $2,325.00 for
the retrial of the matter, and $703.28 for costs of appeal, for a total of
$15,768.23.  Julia points out that $12,740
is roughly 30 percent of $42,465.79—the amount of unsegregated
attorney’s fees Conner originally demanded from Ronald in his August 15, 2002
letter.  Julia also points to certain
statements the trial judge made indicating that he was making his award based
on this calculation.  

            Julia complains the estimates Conner
and Langford gave in the 2002 hearing are not sufficient to show the segregated
amount because they did not consider attorney’s fees spent on claims
intertwined with the child-support-modification claims–i.e., Ronald’s
counterclaims to decrease child support and his claim for offsets for payments
made directly to Julia.  But we have
already addressed and rejected this argument.[4]  Further, having declined to accept Julia’s
segregation evidence, the trial court was entitled to consider the attorneys’
calculations made contemporaneously with their billings as an alternative basis
for awarding segregated fees.  

            We also note that the trial court
made the following unchallenged findings:

 The Court heard this
case on remand from the Fourteenth Court of Appeals for the purpose of
determining the reasonable and necessary attorneys’ fees and costs incurred in
[Julia’s] action to modify child support and the fees and costs incurred in her
defense of [Ronald’s] counterclaims to decrease child support and for credit on
payments made directly to Julia.

The Court heard and considered the testimony, evidence,
pleadings, motions, argument of counsel, law, papers on file with the Court,
the Fourteenth Court of Appeals’ opinion in this case, and all other matters
properly before the Court.

The
record reflects that the trial court made its award only after considering
Julia’s testimony and that of her attorneys as well as the exhibits presented
at the hearing.  Moreover, Julia does not
contend the trial court prevented her from presenting evidence in support of
her claim.  Therefore, we cannot conclude
on this record that the trial court failed to follow this court’s opinion and
mandate in making its attorney’s fee award on remand.  

            Julia next contends the trial
court’s award of $12,740.00 in attorney’s fees is legally and factually
insufficient.  Specifically, she argues
that the award must be set aside because it is “so far less than the
segregation calculation.”  Julia also contends
the award does not compensate her lawyers for their work, noting that Conner
charged $350 an hour for his time, Langford charged $200 an hour, and Taylor
charged $250 per hour.  At this rate, she
contends, the trial court’s award only compensates Conner for 36.4 hours of
work, and it is “undisputed that he spent more time than that on the case” and
even Ronald “was impressed” that Conner could try the case for the amount he
billed Julia.  See Kurtz I, 158 S.W.3d at 18 n.7.  Further, Ronald does not challenge the
reasonableness of the fees.

            In support of her contention that
the evidence is factually insufficient to support the fee award, Julia cites Cullins v. Foster, in which this court held
that a jury’s attorney’s-fee award was factually insufficient when it was far
less than the amount the party’s expert had testified was a reasonable and
necessary fee and the reasonableness of the attorney’s hourly rate was not
challenged.  See 171 S.W.3d at 539–40.  Cullins
is distinguishable, however, because here the trial court apparently applied
Conner’s own estimate that 30 percent of his fees were for the child-support-modification
portion of the case.  And, although
Langford estimated that 50 percent of his fees were for the child-support-modification
portion of the case, the trial court could have discounted his testimony.  Further, we have already determined that
Julia did not show that the trial court was required to accept her segregation
calculations as a matter of law, so the complaint that the award is less than what
she calculated does not render the award legally or factually insufficient.[5]
Under the applicable standards of review, we conclude that the evidence is
legally and factually sufficient to support the trial court’s award.

            We therefore overrule Julia’s first
issue.

III

            In her second issue, Julia contends
the trial court erred by failing to award past and future appellate attorney’s
fees and costs and the full amount of attorney’s fees for the remand.  On remand, Julia sought appellate attorney’s
fees and costs of $37,251.87 for work she and others performed at the law firm
of Wright, Brown & Close, LLP, as well as $13,994.91 for remand fees.  She also sought attorney’s fees of $30,000.00
in the event of a successful appeal to this court and $15,000.00 for a
successful appeal to the supreme court.  Additionally, in her appellate reply brief,
Julia contends she is entitled $57,034.00 for her appellate attorney’s fees and
$1,948.72 in costs incurred in presenting this appeal to the court, and she
also requests an additional $7,500.00 if oral argument is granted and $15,000.00
for a successful appeal to the supreme court.

            The trial court awarded no appellate
attorney’s fees, but included in its total judgment of $15,768.28 an award of $2,325.00,
representing the amount Conner testified he charged Julia for attending the day
of the hearing on remand, and costs of $703.28 for the underlying appeal.  Julia contends the trial court erred in awarding
only $2,325.00 for remand
when Conner offered uncontroverted testimony that his reasonable and necessary
attorney’s fees for his services on remand totaled $13,994.91.  She also contends an award of past and future
appellate attorney’s fees is mandatory on a claim for breach of contract under
Texas Civil Practice and Remedies Code section 38.001.  See End Users, Inc. v. Sys. Supply for End Users, Inc., 14-06-00833-CV, 2007 WL 2790379, at *6 (Tex. App.—Houston [14th
Dist.] Sept. 27, 2007, no pet.) (mem. op.); Lee v. Perez, 120 S.W.3d 463, 469 (Tex. App.—Houston [14th Dist.]
2003, no pet.).

            Ronald responds that the trial court
was not obligated to award any appellate attorney’s fees or fees for the
remand, as this court did not instruct the trial court to do so and the divorce
decree’s attorney’s-fees provision does not provide for such an award.[6]  Specifically, he argues that the provision
limits Julia’s recovery to those fees incurred on or before the entry of the
modification order.  He also responds
that section 38.001 does not apply because Julia’s demand for unsegregated
attorney’s fees at the end of the underlying trial was not one for fees
incurred after presentment of a valid claim, and the trial court originally
found he owed no attorney’s fees under the attorney’s-fees provision.  Ronald further argues that this is a family-law
case, not a breach-of-contract case, Julia brought no claim for breach of
contract, and she obtained no finding that Ronald breached a contract with
respect to the attorney’s-fees provision. 
Ronald also contends Julia waived any claim to appellate or retrial fees
by failing to request findings of fact concerning what would have been a
reasonable and necessary fee for remand or for either appeal.

            With
limited exceptions that do not apply here, under Texas law a party cannot
recover its attorney’s fees unless a statute or a contract expressly provides
for such a recovery.  See Knebel v.
Capital Nat’l Bank in Austin, 518 S.W.2d 795, 799, 803–04 (Tex. 1974); see also Travelers Indem.
Co. of Conn. v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996) (stating that the
authorization for an attorney’s-fees award must be express and cannot be
inferred).  To the extent Julia contends
she is entitled to recover attorney’s fees and costs because the divorce decree
provides for their recovery, the plain language of the attorney’s-fees
provision of the divorce decree precludes this argument.  As noted above, the attorney’s-fees provision
at issue reads as follows:  

            Further,
RONALD D. KURTZ IS ORDERED to pay the attorney’s fees and costs incurred by
JULIA L. KURTZ in a subsequent motion to modify child support.  The attorney for JULIA L. KURTZ will provide
to RONALD D. KURTZ on or before the Order Modifying Prior Order is executed by
the Court a statement of the fees and costs incurred and IT IS ORDERED that
RONALD D. KURZ will pay said fees and costs within thirty (30) days from his
receipt thereof.

This
provision contemplates that Ronald will pay only those “attorney’s fees and
costs” incurred by Julia in a subsequent motion to modify child support.  It further requires Julia’s attorney to
provide to Ronald a statement of these “fees and costs” on or before the date
the trial court “execute[s]” a modification order.  Ronald is then required to pay “said fees and
costs” within thirty days of receiving the statement.  By its terms, the provision contemplates only
those “fees and costs” incurred up to the time the trial court executes an
order modifying Ronald’s child-support obligations.  The provision thus excludes the payment of
attorney’s and fees and costs incurred post-modification, such as fees and
costs incurred on remand, appeal, or a subsequent appeal.  See
Kurtz I, 158 S.W.3d at 22 (“By its express language, the attorney’s fees
provision is limited to attorney’s fees and costs incurred in ‘a subsequent
motion to modify child support.’”). Accordingly, the contract does not provide
a basis for the attorney’s fees and costs Julia seeks.  See
Knebel, 518 S.W.2d at 803–04.

            Julia also asserts that she is
entitled to attorney’s fees under chapter 38 of the Texas Civil Practice and
Remedies Code because her claim is based on a breach of contract.  See
Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)
(Vernon 2008) (stating that a person may recover reasonable attorney’s fees in
addition to the amount of a valid claim and costs if the claim is for an oral
or written contract).  The essential
elements of a breach of contract claim are (1) the existence of a valid
contract, (2) the plaintiff performed or tendered performance, (3) the
defendant breached the contract, and (4) the plaintiff was damaged as a result
of the breach.  Aguiar v. Segal, 167 S.W.3d
443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  A breach occurs when a party fails or refuses
to do something it has promised to do.  Townewest Homeowners Ass’n, Inc. v. Warner Commc’n
Inc., 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ).
 

            Julia argues that the
attorney’s-fees provision is a contract between the parties, citing Kurtz I, 158 S.W.3d at 18 (“Because both
Ronald and Julia agreed to the Decree, its construction is governed by the law
of contracts.”), and points out that this court reversed the trial court’s
failure to award attorney’s fees as provided in the decree.  See id.
at 24–25.[7]  She also argues that on remand the trial
court made implied findings supporting a breach-of-contract claim because, in
its findings of fact three, four, and six, it awarded attorney’s fees for the
first trial and the remand trial. 
Therefore, she contends, the trial court necessarily found a breach of
contract and she is entitled to all the attorney’s fees necessarily incurred to
enforce the divorce decree.  

            We disagree that, on these facts,
Julia has pleaded and proved a breach-of-contract claim for which she may
recover attorney’s fees under chapter 38.  Here, Julia petitioned to modify Ronald’s
child-support obligation and for other relief. 
In her petition, Julia requested reasonable attorney’s fees and expenses,
and pleaded the attorney’s-fees provision of the divorce decree “[a]s further evidence that [Ronald] should be responsible
for the payment of [Julia’s] attorney’s fees.” 
Julia did not allege a breach-of-contract claim at any time during the
modification action or after the trial court entered its order, either in the
trial court or in a separate suit.  Nor
did she plead for recovery of attorney’s fees under chapter 38.  Further, the trial court in the original
modification action was not asked to find, and did not find, that Ronald breached
the attorney’s-fees provision of the decree. 
Although we reversed the trial court’s failure to award Julia attorney’s
fees and costs for the child-support-modification portion of the action in Kurtz I, we did not hold that Ronald
breached the attorney’s-fees provision by failing to pay the attorney’s fees
and costs Julia demanded.  Therefore,
Julia is not entitled to attorney’s fees under chapter 38 because she failed to
plead facts supporting a breach-of-contract claim, she did not request
attorney’s fees under chapter 38, and she was not awarded damages for breach of
contract.  See Cont’l Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 396 n.9 (Tex.
App.—Texarkana 2003, pet. denied) (holding plaintiff not entitled to attorney’s
fees under a breach-of-contract theory when plaintiff failed to request
attorney’s fees under section 38.001 and was not awarded damages for breach of
contract).  

            Additionally, the trial court’s
findings of fact do not require us to conclude that on remand the trial court
impliedly found a breach of contract.  In
Kurtz I, we instructed the trial
court to determine only the limited issue of Julia’s reasonable and necessary
attorney’s fees relating to the child-support-modification portion of the
action.  See 158 S.W.3d at 24–25.  We did not remand the case for any trial or
fact findings concerning a breach-of-contract claim.  Contrary to Julia’s assertions, the trial
court’s findings of fact merely reflect that it carried out this court’s
mandate and nothing more. 

            Concerning appellate fees incurred
in the past appeal, Julia’s claim fails for an additional reason.  Our supreme court has held that the party
requesting attorney’s fees for an appeal must present evidence regarding a
reasonable fee for those services at the original trial.  Varner v. Cardenas, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam).  In Varner,
the court declined to change Texas procedure to allow appellate fees to be
determined on remand when they were not proven in the first trial.  Id.
at 69–70.  Julia does not direct us to
any evidence that in the original hearing she presented evidence of a reasonable
attorney’s fee for appeal, and we have found none.  Accordingly, the trial court had no basis on
which to award any past appellate attorney’s fees.  See id.
69; see also In re Lesikar, 285
S.W.3d 577, 586 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (citing
Varner and holding that prevailing
party waived claim to appellate attorney’s fees on remand because she did not
request appellate fees, present evidence to support fees, or obtain finding or
judgment on issue in first trial).  

            We therefore overrule Julia’s second
issue.

IV

            In her third issue, Julia contends
the trial court erred by failing to award prejudgment interest when the
evidence showed that she had paid her attorney’s fees at the time of
judgment.  Specifically, she contends she
testified that she is entitled to prejudgment interest of $15,410.33 based on
her determination of segregated attorney’s fees of $33,290.23, and requests
that we render judgment for this amount of prejudgment interest.  Alternatively, she requests that we render
judgment for prejudgment interest of $5,026.19 based on the trial court’s award
of $12,740.00.  

            To support her contention that
prejudgment interest on attorney’s fees paid at the time of judgment are
recoverable, Julia relies primarily on Cavnar
v. Quality Control Parking, Inc., 696 S.W.2d 549, 554 (Tex. 1985), superseded by statute as stated in C & H
Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 324–28 (Tex. 1994) and abrogated
in part on other grounds by Johnson & Higgins of Texas, Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507 (1998).[8]  Julia does not contend she is entitled to
prejudgment interest under a statute; rather, she appears to contend she is
entitled to equitable prejudgment interest.

            An award of equitable prejudgment
interest is within the trial court’s discretion.  See Larcon Petroleum, Inc. v. Autotronic Sys., Inc., 576 S.W.2d
873, 879 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ); Hoelscher v. Kilman, No. 03-04-00440-CV,
2006 WL 358238, at *5 (Tex. App.—Austin Feb. 6, 2006, no pet.) (mem. op.);
Robertson v. ADJ P’ship, Ltd., 204
S.W.3d 484, 496 (Tex. App.—Beaumont 2006, pet. denied); Citizens Nat’l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 487
(Tex. App.—Fort Worth 2004, no pet.). 
Therefore, we review the trial court’s decision whether to award prejudgment
interest for abuse of discretion.  Marsh v. Marsh, 949
S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no writ); European Crossroads’ Shopping Ctr., Ltd. v.
Criswell, 910 S.W.2d 45, 55 (Tex. App.—Dallas 1995, writ denied).  It is an abuse of discretion when the trial
court acts without reference to any guiding rules or principles.  Marsh,
949 S.W.2d at 744.

            Here, the parties strenuously disputed
whether, and to what extent, Ronald was required to pay Julia’s attorney’s fees
in a child-support-modification action, and the amount was not determined until
the trial court ruled on remand.  We
cannot say that, on this record, the trial court abused its discretion in
declining to award Julia equitable prejudgment interest.  See
Cobb v. Morace, No. 01-07-01036-CV, 2009 WL
2231909, at *8 (Tex. App.—Houston [1st Dist.] July 23, 2009,
no writ) (mem. op.) (affirming
trial court’s refusal to award prejudgment interest); Robertson, 204 S.W.3d at 496 (same).

            We therefore overrule Julia’s third
issue.

* * *

            The trial court’s judgment is
affirmed.

 

                                                                                    

                                                                        /s/        Jeffrey V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Frost,
and Brown.











[1]
Julia also sought $38,887.88 for appellate attorney’s fees incurred by several
attorneys at the firm of Wright, Brown & Close, LLP.  Julia was formerly employed at this firm and
a portion of the attorney’s fees charged were for her time on the case.  The evidence presented on the issue of
appellate attorney’s fees is discussed separately below.





[2]
The record also includes Conner’s affidavit in which he avers that he presented
the demand letter to Ronald in accordance with the terms of the divorce
decree’s attorney’s fees provision and received confirmation that Ronald
received it on August 16, 2002, about three hours before the trial court signed
its order in the underlying case.





[3]
The reporter’s record in Kurtz I
ultimately consisted of four volumes of reporter’s record, not including the
exhibits or Ronald’s offer of proof.





[4]
Julia additionally complains that even
if the trial court could properly rely on the 2002 hearing testimony, at a
minimum that testimony supported an award of 33.3 percent of Conner’s fees and
50 percent of Langford’s fees.  But
Conner testified to both “30 percent” and “a third.”  Further, the trial court was entitled to
weigh the strength and credibility of each attorney’s testimony, and so was not
bound to apply these percentages.





[5]
We note that this award included an award of 30 percent of Dr. Steinbach’s
expert-witness fee of $1,300.00, which was included in the August 2002 demand
letter.  Ronald contends that the divorce
decree’s attorney’s-fees provision did not authorize payment for anything other
than attorney’s fees, but he failed to file a notice of cross-appeal to
challenge any award of expert witness fees. 
See Tex. R. App. P.
25.1(c).  Therefore, Ronald may not
challenge the judgment to the extent that an expert witness fee (or portion
thereof) was awarded.





[6]
Ronald characterizes the award of
$2,325.00 for remand fees as an “additional, equitable” award that was based on
Conner’s own testimony concerning his fees for the day of retrial.  Because Ronald did not file a cross-appeal, however,
he may not complain about the award for attorney’s fees on remand.  See
Tex. R. App. P. 25.1(c).





[7]
Julia also states that this court held in Kurtz
I that “Ronald failed to pay the attorney’s fees within 30 day of receiving
the invoice.”  Our holding, however, was
limited to the trial court’s abuse of discretion in failing to award any
attorney’s fees as provided in the attorney’s-fees provision of the parties’
divorce decree.  See Kurtz I, 158 S.W.3d at 24–25.  Further, we note that the invoice Julia
refers to was the 2002 demand letter presented by Conner for unsegregated attorney’s fees, and we held that she was not
entitled to all of her attorney’s fees, only those reasonable and necessary
fees incurred in connection with the child-support-modification portion of the
case.  See id.  That amount was not
determined until the trial court ruled on remand.





[8]
Julia also cites Life Insurance Co. of
North America v. Kilhafner, No. 14-96-00850-CV, 1998 WL 340288, at *5 (Tex.
App.—Houston [14th Dist.] June 18, 1998, no pet.) (not designated for publication); Marrs and Smith Partnership v. D.K. Boyd Oil & Gas Co., 223
S.W.3d 1, 25 (Tex. App.—El Paso 2005, pet. denied); and A.V.I., Inc. v. Heathington, 842 S.W.2d 712, 717 (Tex.
App.—Amarillo 1992, writ denied).  The
unpublished case lacks any precedential value and none of these cases hold that
a trial court abuses its discretion by refusing to award prejudgment interest
on attorney’s fees paid at the time of judgment.